UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TIANGYE AGUILAR., | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 3:10-cv-1981 (VLB) |
| STATE OF CONNECTICUT, ET AL. | : | |
| | : | February 22, 2013 |
| Defendants, | : | |

MEMORANDUM OF DECISION GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT [Dkt. #81]

Before the Court is Defendant Christine Whidden's, Warden of the Manson Youth Institution (the "Warden" or "Whidden") motion for summary judgment. The Plaintiff, John Doe, has brought a 42 U.S.C. § 1983 claim against the Warden, in her individual capacity, alleging that the Warden failed to protect the Plaintiff from sexual assault by his cellmate at the Manson Youth Institution in violation of the Eighth Amendment.   For the foregoing reasons, the Court GRANTS the Defendant's motion for summary judgment.

Background

The lawsuit was originally brought by the Plaintiff's mother, Tiangye Aguilar, on behalf of her minor son, John Doe.  [Dkt. #1, Compl.].  The original complaint named the former Warden of the Manson Youth Institution, Jose Feliciano, and the State of Connecticut as Defendants. *Id.* On March 10, 2011, the Defendants moved for a more definite statement.  [Dkt. #24].  In response, the Plaintiff filed an amended complaint this time just naming the State of

Connecticut as a defendant.  [Dkt.#27, First Amended Compl.].   The Defendant State of Connecticut moved to dismiss the first amended complaint on the basis that John Doe was no longer a minor and therefore his mother, Tiangye Aguilar, had no standing to bring suit on his behalf.  [Dkt.# 33].  In response, Tiangye Aguilar filed a motion to substitute her son as the named Plaintiff, which the Court granted.  [Dkt.#39].  The Plaintiff filed another amended complaint which not only changed the name of the Plaintiff and the State of Connecticut as a Defendant, but also named Jose Feliciano as Defendants again.   [Dkt. #42, Second Amended Compl.].

The Defendants then moved to dismiss the second amended complaint on the basis that sovereign immunity under the Eleventh Amendment barred the suit against the State of Connecticut and Jose Feliciano in his official capacity. [Dkt. #43].  The Plaintiff then moved to substitute Whidden for Feliciano as a named Defendant as the Plaintiff learned that Whidden was the Warden of the Manson Youth Institution when the sexual assault occurred.  [Dkt. #54].   The Court granted Plaintiff's motion to substitute Whidden as a Defendant and dismissed the case as against Feliciano.  [Dkt. ##56,59].  The Court then granted the Defendants' motion to dismiss the second amended complaint and dismissed the claims against the State of Connecticut and the Warden in her official capacity. Because sovereign immunity under the Eleventh Amendment barred Plaintiff's *Monell* claims against the State and against the Warden in her official capacity, the Plaintiff's sole remaining claim is that the Warden is liable in her individual capacity for the alleged Eighth Amendment violation.

<u>Facts</u>

The following facts are undisputed unless otherwise noted.  John Doe was a juvenile inmate at the Manson Youth Institution and was incarcerated until March 25, 2009 at which point he was discharged from custody to the supervision of a parole officer.  [Dkt. #82,Def. Local Rule 56(a)(1) Statement, ¶18].  On March 9, 2009, John Doe was sexually assaulted by his cellmate at the Manson Youth Institution.   Prior to the incident, John Doe had only shared a cell with his assailant for a day or two at most.  *Id.* at ¶2.   John Doe admitted that he had no reason to fear for his safety prior to the incident and never indicated to any correctional staff that he had any reason to fear for his safety.  *Id.* at ¶¶4-5.

Whidden has been the Warden of the Manson Youth Institution ("MYI") since 2003.   *Id.* at ¶21. In 2009, MYI housed approximately 650 offenders, being mandated to house persons committed to the custody of the Commissioner of Correction.   *Id.* at ¶22.   As the Warden of MYI, Whidden oversaw numerous operation and programs and a staff of approximately 300 employees.  *Id.* at ¶¶27,30.   Whidden delegated many of the day-to-day decisions, such as the placement of an inmate in a particular cell with another inmate, to staff at the facility.   *Id.* at ¶32.   Generally, cell assignments were made by the Unit Management staff based upon the following: cell availability, offender's age, known special management status, if any, and current status.  *Id.* at ¶33. Unit Managers are generally Correctional Captains, who are directly supervised by Deputy Wardens.  *Id.* at ¶34.

Whidden was not specifically aware of inmate Doe nor was personally aware of Doe's assailant. *Id.* at ¶35. Whidden never received news or notice of any complaint or fears expressed by Doe. *Id.* at ¶35. John Doe had never met Whidden. *Id.* at ¶2. Whidden was not personally involved in the decision to place the Plaintiff and his assailant in the same cell. *Id.* at ¶48.

All inmates within the custody of the Commissioner of Correction are classified pursuant to a multi-factored, comprehensive classification system for security and for preparation for release from confinement and supervision. [Dkt. #82,Def. Local Rule 56(a)(1) Statement, ¶54]. Classification affects an inmate's status, housing, and call and job assignments. *Id.* at ¶54. The classification system is based upon objective factors intended to enhance the goals of classification and to avoid discrimination on any impermissible and is consistent with the recommendations of the American Correctional Association. *Id.* at ¶56. Inmates are assigned an overall risk level on a scale of 1-5 as part of this classification system to see that inmates are receiving appropriate housing and programming for their needs. *Id.* at ¶57. Level 1 indicates lower risk and Level 5 indicates a higher level of risk. *Id.* at ¶58. These scores are based on objective criteria. *Id.* at ¶59. The overall risk level is based on seven numerical scores called risk scores as well as seven numerical scores called need scores. *Id.* at ¶60. The risk scores are based on history of escape, severity/violence of current offense, history of violence, length of sentence, presence of pending charges, bond amount, and/or detainers, discipline history and security risk group (gang) membership. *Id.* at ¶61. An inmate's needs scores are based on medical and

health care, mental health care, educational needs, vocation training and work skills, substance abuse treatment, sex offender needs, and community resources. *Id.* at ¶62.  On March 9, 2009, the assailant's overall risk score was a four based on all of these scores but being primarily driven by his highest risk score, which was the bond/detainer score based on the bond set by the Court.  *Id.* at ¶63.  On March 9, 2009, the Plaintiff's overall risk score was a three and was primarily driven by his bond/detainer score based on the bond set by the Court.  *Id.* at ¶64. After the incident the assailant's risk level was raised to a 5.  *Id.* at ¶68.

There are two separate files maintained with regard to each inmate within the DOC: the inmate master file and the inmate's confidential health file which are governed by Administrative Directive 4.1 and 8.7 respectively.  *Id.* at ¶69.  Prior to March 9, 2009, Whidden did not access either the Plaintiff or the assailant's files nor was she provided with any information from these files. *Id.* at ¶¶75-77, 87.

Pursuant to Administrative Directive 6.12, the Connecticut Department of Corrections ("DOC") has adopted a Sexual Assault Prevention Policy (the "Policy").  [Dkt. #92, Ex. 1].  The Policy provides that the DOC "shall maintain a zero tolerance policy on sexual assault that actively identified and monitors any inmate who exhibits characteristics of a victim or a predator." *Id.* at 1. The Policy provides guidance as to staff training and inmate orientation.  *Id.* at 2.  It further provides criteria for identifying both victims of sexual assault and predators.  The Policy defines a "Victim Profile" to include the follow characteristics or trait which may subject an inmate to sexual assault:  vulnerable, non-violent inmate, Young, late teens or early 20's, small physical stature, first time inmate who if not

familiar with the environment, effeminate (e.g., beardless, smooth skinned, more feminine in appearance, etc.), inmates lacking street smarts, inmates with mental illness or intellectual disability/ deficit, and/or inmates convicted of sex crimes. *Id.* at 2-3.   The "Predator Profile" is defined to include the following characteristics or traits:  violent history – street smart and an experienced fighter, history of rape or sexual abuse, large physical stature, possess power and authority – feared by most inmates and staff; recidivist – experienced in prison culture, has an antisocial personality, engaged in other criminal activity, and/or manipulative.  *Id.* at 3.  In addition, the Policy indicates that the "predator in a male on male or female on female sexual assault does not necessarily perceive himself/herself as being a homosexual.  Often, the perpetrator is hyper-masculine and utilizes aggression to gain a sense of importance.  The sexual predator will watch and wait until the right type of inmate is accessible and create the opportunity to begin 'grooming' of the targeted inmate." *Id.*

At the time of the incident, the Plaintiff's assailant had one pending misdemeanor charge of Sexual Assault in the Fourth Degree. [Dkt. #82, Def. Local Rule 56(a)(1) Statement, ¶39].   The assailant was not charged as an adult, but was charged and was being held as a Youthful Offender and had no previous convictions or adjudications. *Id.* at ¶¶40 and 44.  According to the assailant's voluntary interview statement to the DOC given after the alleged incident as part of the DOC's investigation of the Plaintiff's alleged sexual assault, the assailant was charged with sexual assault in the fourth degree because he touched a 17

year old girl in the Hartford Library on the legs and back.  [Dkt. #92, Ex. 2., p.9].[1]

"A person is guilty of sexual assault in the fourth degree when: (1) Such person intentionally subjects another person to sexual contact." §53a–73a   The offense is committed when the person touching and the person being toughed fall within certain age and authority classifications.  *Id.*   Force is not an element of the offense and one could commit sexual assault in the fourth degree even if the contact was consensual.  *Id.*. The assailant had been previously incarcerated three times by the Connecticut Department of Corrections.  [Dkt. #93, Pl.. Local Rule 56(a)(1) Statement, Disputed Issues of Material Fact, ¶12].  While an inmate, the assailant had been disciplined for fighting with another inmate while at MYI but had not been accused of or disciplined for any sexual misconduct.  [Dkt. #82,Def. Local Rule 56(a)(1) Statement, ¶41].  The assailant was 17 years old, 6 feet tall and weighed 155 pounds. *Id.* at ¶43.  The Plaintiff had also been similarly disciplined for fighting at MYI.  *Id.* at ¶42.   At the time of the assault, the Plaintiff was 16 and 1/3 years old., 5'7" tall and weighed 165 pounds.  *Id.* at ¶46.

As soon as the Plaintiff reported the sexual assault, MYI staff took immediate action, separated the two inmates, conducted an investigation, provided the Plaintiff with a mental health evaluation and treatment, contacted the Connecticut State Police and cooperated in their investigation and subsequent prosecution of the assailant.  *Id.* at ¶53.  After the DOC's investigation of the sexual assault at issue, the Security Division Investigative Unit of the DOC

---

[1] The statement of the assailant as accounted in the DOC's investigation report is not inadmissible hearsay as it is not being offered to prove the truth of the matter asserted but instead goes to such issues as the appropriate risk classification of the assailant.

concluded that the assailant fit the profile of a predator under the Sexual Assault Prevention Policy in part in light of the assault against the Plaintiff. [Dkt. #92, Ex. 2., p.7].

Legal Standard

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Fed.R.Civ.P. 56(a). The moving party bears the burden of proving that no factual issues exist. *Vivenzio v. City of Syracuse,* 611 F.3d 98, 106 (2d Cir.2010). "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought." *Id.,* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). "If there is any evidence in the record that could reasonably support a jury's verdict for the nonmoving party, summary judgment must be denied." *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH,* 446 F.3d 313, 315–16 (2d Cir.2006) (internal quotation marks and citation omitted).

"A party opposing summary judgment cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible. At the summary judgment stage of the proceeding, Plaintiffs are required to present admissible evidence in support of their allegations; allegations alone, without evidence to

back them up, are not sufficient." *Welch–Rubin v. Sandals Corp.,* No.3:03cv481, 2004 WL 2472280, at *1 (D.Conn. Oct. 20, 2004) (internal quotation marks and citations omitted); *Martinez v. State of Connecticut*, No. 3:09cv1341 (VLB), 2011 WL 4396704 at *6 (D. Conn. Sept. 21, 2011).  Where there is no evidence upon which a jury could properly proceed to find a verdict for the party producing it and upon whom the onus of proof is imposed, such as where the evidence offered consists of conclusory assertions without further support in the record, summary judgment may lie. *Fincher v. Depository Trust and Clearance Co.,* 604 F.3d 712 (2d Cir. 2010).

### Analysis

It is "well established in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under §1983." *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir 2010). Consequently to state a claim under §1983, a plaintiff must demonstrate the personal involvement of the defendant.  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994).  In the present case, it is undisputed that Whidden was not personally involved in the constitutional deprivation as she played no role in the decision to place the Plaintiff in the same cell as his assailant.  Moreover, the Plaintiff admittedly has failed to name a Defendant who was personally involved in the constitutional deprivation.  Instead, the Plaintiff argues that the Warden can be liable in her individual capacity on a theory of supervisory liability.   It is well established that "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat*

*superior.*"  *Iqbal*, 556 U.S. at 676.  Since a supervisor cannot be held liable for simply being a supervisor, "proof of linkage in the prison chain of command" is insufficient to establish liability.  *Hernandez v. Keane*, 341 F.3d 137, 145 (2d Cir.2003) (internal quotation marks and citation omitted).

Supervisory liability may be "'imposed against a supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision or control of his subordinates."  *Odom v. Matteo*, 772 F. Supp. 2d 377, 403 (D. Conn. 2011) (internal quotation marks and citation omitted). Supervisory liability may be established by the following factors articulated by the Second Circuit in *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (hereinafter the "Colon Factors"):

> The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Id.*[2]  In addition, the plaintiff must demonstrate an affirmative causal link between the supervisory official's failure to act and his injury. *Poe v. Leonard,* 282 F.3d 123, 140 (2d Cir.2002).

---

[2] The recent Supreme Court decision in *Ashcroft v. Iqbal* has called into question whether all of the *Colon* factors remain a basis for establishing supervisory liability and that "no clear consensus has emerged among the district courts within this circuit." *Aguilar v. Immigration and Customs Enforcement Div. of the United States,* No.07CIV8224, 2011 WL 3273160, at *10 (S.D.N.Y. August 1, 2011)

The Plaintiff argues that the Warden and her subordinate staff should have known that the assailant had a prior history of sexual assault and other incarcerations and that the assailant fit the profile of a sexual predator in the Sexual Assault Prevention Policy.  [Dkt. #93, Pl.. Local Rule 56(a)(1) Statement, Disputed Issues of Material Fact, ¶¶3,6].  Plaintiff further contends that Whidden violated the Eighth Amendment by failing to protect the Plaintiff in placing him in the same cell with a sexual predator.  *Id.* at ¶14.  Plaintiff conclusorily argues that Whidden failed to protect him in not adequately implementing or applying the DOC's Administrative Directive 6.12, the Sexual Assault Prevention Policy and that Whidden was grossly negligent in managing her subordinates with regard to the application of the Sexual Assault Prevention Policy.  *Id.* at ¶¶13,15.

While the Plaintiff is correct that Whidden as Warden could be liable in her individual capacity under a theory of supervisory liability, it is equally as well established that "[s]upervisory liability under §1983 presupposes a constitutional violation."  *Anderson v. Lantz*, No.3:07-cv-1689 (MRK), 2009 WL 2132710, at *7 (D.Conn. July 14, 2009) (citing *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003)).  According to the Second Circuit, "[o]f course, for a supervisor to be liable under Section 1983, there must have been an underlying constitutional deprivation" by a subordinate.  *Blyden v. Mancusi*, 186 F.3d 252, 265 (2d Cir. 1999); see also *Brown v. Simmons*, No.89-cv-150, 1994 WL 144252, at *3 (N.D.N.Y. April 18, 1994) ("Absence of direct participation by a defendant supervisor, a

(collecting cases).  However, the Court need not assess *Iqbal*'s impact on the *Colon* factors in the present case as there is no basis for supervisory liability in the first instance based on the evidence in the record.

necessary predicate to supervisor liability is a finding that an 'unconstitutional practice occurred' and/or that the defendant's supervisor's subordinates 'caused [an] unlawful condition or event.'") (citation omitted); *Wesley v. Hardy*, No.05Civ.6492, 2006 WL 3898199, at \*5 (S.D.N.Y. Dec.12, 2006) ("Moreover, there must be an underlying constitutional deprivation by a subordinate for a supervisor to be liable under section 1983.").

In the present case, the Plaintiff essentially asks the Court to ignore the fact that the Plaintiff has not asserted, much less offered facts, of an underlying constitutional deprivation, He asks the court to focus on whether the Warden's conduct satisfies any of the five *Colon* factors; however, a supervisor can only be liable where his or her subordinate engaged in unconstitutional conduct.  The Plaintiff has failed to identify Whidden's subordinate and has failed to offer facts as to the purported unconstitutional conduct in which that person engaged which resulted in the Plaintiff and his assailant being placed in the same cell.  He has submitted no evidence of the identity or the conduct of the subordinate. Consequently, the Plaintiff has failed to establish that there was an underlying constitutional deprivation.

This is particularly true in the context of a failure to protect claim under the Eighth Amendment, which the Supreme Court has made clear involves a subjective inquiry and analysis.  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "The Eighth Amendment's proscription against cruel and unusual punishment imposes a duty on prison officials to take reasonable measures to guarantee safety of the inmates." *Bourguignon v. Lantz*, No.3:05CV245(SRU), 2006 WL

214009, at *4 (D.Conn. Jan. 25, 2006) (internal quotation marks and citations omitted). "To establish a constitutional violation, a prisoner must show that he was 'incarcerated under conditions posing a substantial risk of serious harm,' and that the prison official showed 'deliberate indifference' to the prisoner's health or safety." *Id.* (quoting *Farmer*, 511 U.S. at 834). The Supreme Court in *Farmer* expressly rejected the "invitation to adopt an objective test for deliberate indifference." *Farmer*, 511 U.S. at 837. Instead, the Supreme Court held that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* Consequently, "deliberate indifference is a *subjective* standard requiring proof of actual knowledge of risk by the prison official." *Cash v. County of Erie*, 654 F.3d 324, 241 n.8 (2d Cir. 2011) (emphasis in the original).

In order to find an underlying violation of the Eighth Amendment in the present case, the Plaintiff would have had to identify the subordinate official who made the cell placement and further provide evidence as to the actual knowledge of risk by that subordinate official. Because the Plaintiff has failed to identify the subordinate official nevertheless demonstrate that this official was both aware of facts from which an inference of an excessive risk to inmate health or safety could be drawn and did draw that inference, the Court cannot determine whether the Plaintiff's Eighth Amendment rights were violated. As discussed above in

the absence of a finding that there is an underlying constitutional violation, a supervisory official cannot be liable under §1983.   Therefore where there is no underlying constitutional deprivation by a subordinate, the claim against the supervisor should be dismissed. *Fransua v. Vadlumdi*, No.05-1715-pr, 2008 WL 4810066, at *1 (2d Cir. Nov. 3, 2008.).   The Court then need not address whether Whidden's conduct satisfied any of the *Colon* factors as the Plaintiff has failed to demonstrate an underlying constitutional deprivation in the first instance.

Even if the Plaintiff had established an underlying constitutional deprivation, the Plaintiff's evidence falls far short of satisfying any of the *Colon* factors as the Plaintiff's evidence boils down to his threadbare contention that Whidden was grossly negligent in managing her subordinates and failed to implement the Sexual Assault Prevention Policy because the Plaintiff was sexually assaulted.   There are no facts in the record indicating that Whidden was on notice that her subordinates were committing wrongful acts or not appropriately applying the Sexual Assault Prevention Policy prior to the sexual assault of the Plaintiff.   As the Second Circuit explained the appropriate inquiry in determining the existence of gross negligence focuses on whether the supervisor "knew or should have known that there was a high degree of risk that [the subordinate would commit that wrong], but either deliberately or recklessly disregarded that risk by failing to take action that a reasonable supervisor would find necessary to prevent such a risk, and that failure caused a constitutional injury."   *Poe v. Leonard*, 282 F.3d 123, 142 (2d Cir. 2002).   Again there is no evidence that Whidden knew or should have known that there was a high degree

of risk that the unidentified subordinate official who made the cell placement would engage in unconstitutional conduct.

Further, Federal Rule of Civil Procedure 56(e) "requires that the party opposing summary judgment must set forth specific facts showing that there is genuine issue for trial…[C]onclusory allegations unsupported by specific evidence will be insufficient to establish a genuine issue of fact." *Lujan v. Nat'l Wildlife Federation*, 497 U.S. 871, 902 (1990) (internal quotation marks and citations omitted).  Plaintiff's conclusory assertions that Whidden failed to implement the Sexual Assault Prevention Policy and failed to supervise her subordinates are insufficient to establish a genuine issue of fact to survive summary judgment.

The Court further notes that it would be futile to now allow Plaintiff leave to amend his complaint once again to add as a defendant the subordinate prison official who made the cell placement as any claims against such official would be barred by §1983's three year statute of limitations and any such amendment would not relate back to the date of the original complaint.  *See Lounsbury v. Jeffries,* 25 F.3d 131, 134 (2d Cir.1994).  "[W]here the plaintiff moves to amend to add a defendant beyond the statute of limitations period, the proposed amendment is untimely and must be denied as futile unless it related back to the date on which the original complaint was filed."  *Smith v. Westchester County Dept. of Correction*s, No.07Civ.1803(SAS), 2012 WL 527222, at *4 (S.D.N.Y. Feb. 15, 2012) (internal quotation marks and citations omitted).

"Rule 15(c) ... imposes three requirements before an amended complaint against a newly added defendant can relate back to the original complaint." *Id.* "*First,* the claim against the newly named defendant must have arisen 'out of the conduct, transaction, or occurrence set out-or attempted to be set out-in the original pleading.'" Id. (quoting Fed. Rules Civ. Proc. 15(c)(1)(B), (C)). "*Second,* 'within the period provided by Rule 4(m) for serving the summons and complaint" (which is ordinarily 120 days from when the complaint is filed, see Rule 4(m)), the newly named defendant must have 'received such notice of the action that it will not be prejudiced in defending on the merits .'" *Id.* (quoting Rule 15(c)(1)(C)(i)). "*Finally,* the plaintiff must show that, within the Rule 4(m) period, the newly named defendant 'knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.'" *Id.* (quoting Rule 15(c)(1)(C)(ii)). "Rule 15(c) does not allow an amended complaint adding new defendants to relate back if the newly-added defendants were not named originally because the plaintiff did not know their identities." *Id.* at 6. Further, "Rule 15(c) explicitly allows the relation back of an amendment due to a 'mistake' concerning the identity of the parties (under certain circumstances), but the failure to identify individual defendants when the plaintiff knows that such defendants must be named cannot be characterized as a mistake." *Id.* (citing *Barrow v. Wethersfield Police Dept.,* 66 F.3d 466, 470 (2d Cir. 1995)).   Here, the Plaintiff would not be able to demonstrate that he had made a mistake concerning the proper party's identity as the failure to identify the individual defendant who was personally involved in the constitutional deprivation in a §1983 suit cannot

be characterized as a mistake.  Therefore the Plaintiff would not be able to carry his burden to demonstrate that such claims should relate back for statute of limitations purposes.

Even if the claims related back and were therefore not barred by the statute of limitations, the Court would be disinclined to permit leave to amend.  Although Rule 15 of the Federal Rules of Civil Procedure provides that leave to amend the pleadings should be "freely give[n] ... when justice so requires," Fed.R.Civ.P. 15(a)(2), "[t]he rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith." *Block v. First Blood Assocs.,* 988 F.2d 344, 350 (2d Cir.1993). The Second Circuit has "referred to the prejudice to the opposing party resulting from a proposed amendment as among the 'most important' reasons to deny leave to amend." *AEP Energy Servs. Gas Holding Co. v. Bank of American N.A.,* 626 F.3d 699, 725 (2d Cir.2010) (citation omitted). "Amendment may be prejudicial when, among other things, it would require the opponent to expend significant additional resources to conduct discovery and prepare for trial or significantly delay the resolution of the dispute." *AEP Energy,* 626 F.3d at 725–25 (internal quotation marks and citation omitted). Courts have typically found amendments to be prejudicial in circumstances where discovery has been completed and the case is near or on the eve of trial. *Ansam Assocs., Inc. v. Cola Petroleum, Ltd.,* 760 F.2d 442, 446 (2d Cir.1985) (affirming denial of motion to amend as "especially prejudicial given the fact that discovery had been completed and [the defendant] had already filed a motion for summary judgment"); *see also Krumme v.*

*WestPoint Stevens, Inc.,* 143 F.3d 71, 88 (2d Cir.1998) (same where "case was near resolution and discovery had been completed"); *Juncewicz v. Patton,* No. 01–cv–0519E(SR), 2002 WL 31654957, at *6 (W.D.N.Y. Oct. 8, 2002) (denying leave to amend leave to complaint on "eve of trial" as that would "unduly delay the final disposition of this action").   Here, Defendant Whidden would unquestionably be prejudiced as she has been actively litigating this action for over one year and has filed a motion for summary judgment.   To permit an amendment at this late juncture would unduly delay the resolution of this litigation as discovery would have to be reopened and thus give the Plaintiff another bite at the apple with respect to Defendant Whidden.   Although the Plaintiff has not moved for leave to amend the complaint, permitting him to do so now would be both prejudicial and cause undue delay.

<u>Conclusion</u>

For the aforementioned reasons, the Court GRANTS Defendant's [Dkt. #81] motion for summary judgment.   The Clerk is directed to enter judgment in favor of Defendant and close the case.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: February 22, 2013